**THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ROBERT GLENN<br><br>Plaintiff,<br>v.<br><br>H M D TRUCKING, INC. and<br>CRISTIAN GISCA<br><br>Defendants. | Civil Action No. 1:18-cv-04410-ELR |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGEMENT**

COMES NOW, ROBERT GLENN, Plaintiff in the above-styled action, by and through his undersigned counsel, and files this Response in Opposition to Defendants' Motion for Partial Summary Judgment and showing this Honorable Court as follows.

## I. INTRODUCTION

The Court should deny Defendants' motion for partial summary judgment because there is clear and convincing evidence creating a jury issue as to whether Defendants' conduct meets the punitive damages standard under Georgia law. As a general rule, "**[w]hether the tort was sufficiently aggravating to authorize punitive damages is generally a jury question.**" Tookes v. Murray, *infra* (emphasis added). As shown below, the undisputed facts and applicable law show

that Defendant HMD's conduct in hiring and entrusting Defendant Cristian Gisca to operate a commercial motor vehicle even though he had a driving history that included

- Twenty (20) citations/violations of state or federal law; and
- Seven (7) out-of-service orders

in the twenty (20) months before he was hired by Defendant HMD. This evidence is more than sufficient to create a jury issue as to whether Defendant HMD acted in wanton disregard to the consequences of hiring/retaining a driver who obviously was not accustomed to driving with due care and who instead had a history that affirmatively showed dangerous driving propensities. See O.C.G.A. § 51-12-5.1(b)) (Georgia's Punitive Damages Statute).

## II. STATEMENT OF FACTS

The Subject Collision & Citation to Defendant Gisca

This case arises out of a motor vehicle collision that occurred on September 6, 2016 wherein a tractor-trailer being operated by Defendant Gisca was traveling north on Interstate 75 in Stockbridge, Georgia when he swerved out of his lane and struck the vehicle being operated by Plaintiff Robert Glenn. See Complaint [Dkt. 1-1] at ¶ 10 – 34; Cristian Gisca's Answer [Dkt 3] at ¶ 11 – 19, 21 – 23; HMD Trucking, Inc.'s Answer [Dkt. 4] at ¶ 12 – 19, 21 – 23. At the time of the collision, Defendant Gisca was operating the tractor-trailer in the course and scope of his

agency with Defendant HMD Trucking, Inc. ("HMD"), an interstate motor carrier. See Deposition of Cristian Gisca at P. 10, Li. 4 – 14; a copy of which is attached hereto as Exhibit A. Defendant Gisca was cited for failure to maintain lane in violation of O.C.G.A. § 40-6-48. See Exhibit A at P. 133, Li. 4 – 9. He pled *nolo contendre* and paid a fine but also submitted an affidavit stating he wished to plead guilty. Id. at P. 137, Li. 5 – P. 138, Li. 10, P. 134, Li. 16 – P. 135, Li. 10, P. 140, Li. 2 – 4.[1]

Defendant Gisca's Driving History

Defendant Gisca obtained his Commercial Driver's License ("CDL") on July 28, 2015, twenty days after his twenty-first birthday. See Exhibit A at P. 24, Li. 23 – P. 25, Li. 2. He worked for two other motor carriers before he was hired by Defendant HMD in August of 2016. Id. at P. 29, Li. 16 – 19, P. 32, Li. 12 – 14, P. 25, Li. 3 – 16, P. 26, Li. 11 – 22. On August 10, 2016, Defendant HMD performed an annual review of Defendant Gisca's driving record. See Deposition of HMD Trucking, Inc. at P. 31, Li. 15 – 20; a copy of which is attached hereto as Exhibit B. See also Gisca Depo. at Exhibit 5; a copy of which is attached hereto as Exhibit C. As part of its hiring process/review, Defendant HMD obtained a PSP report (Pre-Employment Screening Program Report) from the FMCSA. See Gisca Depo. at

[1] Defendant Gisca further confirmed at his deposition that the driver's log he filled out on the day of the subject collision had several inaccuracies in it. See Exhibit A at P. 100, Li. 6 – 14, P. 95, Li. 3 – 5.

Exhibit 6; a copy of which is attached hereto as Exhibit D. See also HMD Depo. at P. 31, Li. 21 – 25. Defendant Gisca confirmed at his deposition that the table shown on the next page is an accurate summary of his driving history for the two years before he was hired by Defendant HMD and accurately reflects the information contained in the 2016 HMD annual review and PSP Report. See Gisca Depo. at Exhibit 7; a copy of which is attached hereto as Exhibit E. See also Gisca Depo. at P. 71, Li. 24 – P. 72, Li. 8, P. 52, Li. 10 – 18, P. 50, Li. 4 – P. 51, Li. 13.

| | **Date** | **State** | **Violation** |
|---|---|---|---|
| 1 | Dec. 1, 2015 | AZ | Failing to use seatbelt while operating CMV (392.16) |
| 2 | June 19, 2015 | WA | U-Turns Restricted |
| 3 | Jan. 20, 2016 | OR | Windshield wipers inoperative/defective (393.78) |
| 4 | Jan. 20, 2016 | OR | Inoperative turn signal (393.9(a)) |
| 5 | Jan. 20, 2016 | OR | Following too close (392.2) |
| 6 | Feb. 5, 2016 | TX | Clamp or roto type brake out of adjustment (393.47(e)) |
| 7 | Feb. 5, 2016 | TX | Failing to secure vehicle equipment (392.9(a)(2)) - **OOS** |
| 8 | Feb. 5, 2016 | TX | Airbrake system violation (393.53(b)) |
| 9 | April 13, 2016 | CA | Hubs – Wheel seal leaking – Outer Wheel (396.5(b)) – **OOS** |
| 10 | April 13, 2016 | CA | Registration/License Plate Violation (392.2) |
| 11 | April 13, 2016 | CA | Clamp or Roto type brake out of adjustment (393.47(e)) |
| 12 | April 15, 2016 | OH | Fuel use permit violation (Section 5728.02 of OH code) |
| 13 | April 18, 2016 | US | Flat tire or fabric exposed (393.75(a)) - **OOS** |
| 14 | April 18, 2016 | US | Inadequate brakes for safe stopping (393.47(a)) - **OOS** |
| 15 | April 18, 2016 | US | Inadequate brakes for safe stopping (393.47(a)) – **OOS** |
| 16 | April 18, 2016 | US | Inadequate brakes for safe stopping (393.47(a)) – **OOS** |
| 17 | April 18, 2016 | US | Insurance violation (387.7(a)) |
| 18 | June 25, 2016 | PA | No or improper load securement (393.100(a)) - **OOS** |
| 19 | June 25, 2016 | PA | Violation of local laws (392.2) |
| 20 | June 25, 2016 | PA | Violation of local laws (392.2) |

Defendant Gisca paid the fines for these citations and/or confirmed that these violations were in fact legitimately issued although he denied that they were his fault. See Exhibit A at P. 53, Li. 12 – P. 54, Li. 8, P. 56, Li. 16 – P. 57, Li. 7, P. 57, Li. 25

– P. 58, Li. 7, P. 61, Li. 2 – P. 63, Li. 8, P. 65, Li. 20 – 21, P. 66, Li. 1 – P. 67, Li. 14, P. 67, Li. 15 – P. 71, Li. 7. Defendant Gisca made sure that HMD was aware of all violations listed on this chart. Id. at P. 51, Li. 14 – 17, P. 52, Li. 19 – 21. Yet, no one at HMD asked for his explanation regarding any of these violations. Id. at P. 71, Li. 13 – 15.

Defendant HMD's Duties & Decision to Hire Defendant Gisca

HMD understood that in order to become a motor carrier with authority to operate across the United States, it had to take on certain duties and responsibilities including compliance with the Federal Motor Carrier Safety Regulations ("FMCSRs") and to take reasonable steps to make sure its drivers are qualified to operate commercial motor vehicles in a safe and reasonable manner. See Exhibit B at P. 25, Li. 9 – P. 26, Li. 5. HMD acknowledges that it has a duty to make sure each driver meets the minimum requirements for safe driving by reviewing their driving history and any evidence they violated state laws or the federal regulations. See Depo. of HMD at P. 26, Li. 11 – P. 27, Li. 3.

Defendant HMD knew about nineteen of the violations listed on the table above at the time they hired Defendant Gisca. See Exhibit B at P. 34, Li. 21 – 24, P. 35, Li. 6 – 11. Defendant HMD further admitted that it did not consider any of the violations on Defendant Gisca's record related to vehicle maintenance when it made the decision to hire him. Id. at P. 40, Li. 3 – 11.

Defendant HMD's Internal Policies Regarding Driver Qualification

According to its corporate representative, Defendant HMD had hiring criteria in place at the time Defendant Gisca was hired; however, no such criteria for that time frame has ever been produced.[2] Id. at P. 28, Li. 19 – P. 29, Li. 1. Defendant HMD had additional policies and procedures in place at the time Defendant Gisca was hired including those relating to "Consequences of Non-Complience [sic]" and "Unsafe Driving/Moving Violations." See Exhibit B at P. 19, Li. 18 – P. 20, Li. 5, P. 30, Li. 4 – 9, Depo. of HMD Exhibit 26 at P. 7; a copy of which is attached hereto as Exhibit F. Under this policy, a driver is disqualified from driving for HMD and is to be terminated if they have three or more instances of unsafe driving/moving violations in a three-year period. See Depo of HMD at P. 30, Li. 10 – P. 32, Li. 5.

Defendant HMD's corporate representative testified that if someone were to receive the citations reflected on Defendant Gisca's driving history after they were hired by HMD, they would be subject to HMD's discipline policy and potentially terminated. See Exhibit B at P. 41, Li. 1 – P. 42, Li. 4, P. 35, Li. 12 – P. 36, Li. 7; Exhibit E.

---

[2] During the deposition of HMD, Defendants produced a copy of the current hiring criteria. This was not in effect at the time Defendant Gisca was hired. See Exhibit B at P. 43, Li. 13 – 25.

## III. STANDARD OF REVIEW

### A. SUMMARY JUDGEMENT STANDARD

A party is entitled to summary judgment **only** if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). "A party moving for summary judgment has the burden of showing that there is no genuine issue of fact." Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir.1990). An issue of fact "is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). In considering a motion for summary judgment, the district court shall "construe the facts and draw all reasonable inferences in the light most favorable to the non-moving party." See Pipkins v. City of Temple Terrace, Fla., 267 F.3d 1197, 1199 (11th Cir. 2001) *citing* Wideman v. Wal–Mart Stores, Inc., 141 F.3d 1453, 1454 (11th Cir.1998). See also Oatman v. Augusta Collection Agency, Inc., No. CV 118-089, 2019 WL 6770678, at *5 (S.D. Ga. Dec. 11, 2019) *citing* Shuler v. Ingram & Assocs., 441 F. App'x 712, 717 (11th Cir. 2011). "[A]ll reasonable doubts about the facts should be resolved in favor of the nonmoving litigant." Westlake v. Abrams, 565 F. Supp. 1330, 1338 (N.D. Ga. 1983).

**B. APPLICABLE LAW STANDARD**

This case is pending in federal court on the basis of diversity jurisdiction; therefore, the court must apply the substantive law of the state of Georgia. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938).

**C. PUNITIVE DAMAGES STANDARD UNDER O.C.G.A. § 51-12-5.1**

Under Georgia law, "whether the tort was sufficiently aggravating to authorize punitive damages is generally a jury question[.]" Tookes v. Murray, 297 Ga. App. 765, 768 (2009) (emphasis added); Tunsil v. Jackson, 248 Ga. App 496, 499 (2001) ("Whether punitive damages should be awarded is ordinarily a jury question."). So long as "any evidence" supports the imposition of punitive damages, the issue should go to the jury. Paine v. Nations, 283 Ga. App. 167, 183 (2006) (affirming jury's award of punitive damages under "any evidence" standard).

**IV. ARGUMENT AND CITATION OF AUTHORITY**

The Court should deny Defendants' Partial Motion for Summary Judgment because there are genuine issues of fact regarding Plaintiff's claim for punitive damages against Defendant HMD.[3] The overwhelming evidence establishes that Defendant HMD acted with a wanton disregard for the safety of others when it

[3] Defendants' Motion for Partial Summary Judgment seeks the dismissal of Plaintiff's punitive damage claims against both Defendant Gisca and Defendant HMD. Plaintiff does not oppose Defendants' Motion related to Defendant Gisca and agrees to a dismissal of this claim.

consciously disregarded its own knowledge regarding Defendant Gisca's driving history and hired him/allowed him to operate its commercial motor vehicles on public roadways.

Specifically, Defendants' motion for partial summary judgment should be denied because the evidence shows:

A. Defendant HMD had knowledge of Defendant Gisca's checkered driving history and exhibited conscious indifference in allowing him to drive despite his propensity for dangerous driving;

B. Defendant HMD ignored its duties under the FMCSRs to determine whether Defendant Gisca meets the minimum requirements for safe driving; and

C. Defendant HMD's own policies establish that it should have terminated Defendant Gisca long before the crash at issue occurred.

## A. A JURY ISSUE EXISTS AS TO PLAINTIFF'S CLAIMS FOR PUNITIVE DAMAGES BECAUSE DEFENDANT GISCA'S DRIVING HISTORY SHOWS DANGEROUS PROPENSITIES AND INCOMPETENCE.

Claims for Negligent Hiring/Entrustment Against Defendant HMD

Under Georgia law, an employer "has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others." Munroe v. Universal Health Servs., Inc., 277 Ga. 861 (2004); O.C.G.A. § 34-7-20. In order to support a claim for negligent retention, supervision

or hiring, the plaintiff must show that Defendant "knew or *should have known* of the employee's dangerous propensities." La Croix v. Spears Mattress Co., No. 1:04-CV-1 (WLS), 2005 WL 1924712, at *3 (M.D. Ga. Aug. 10, 2005) *citing* Smith v. Tony Roberts Trucking, 209 Ga.App. 826, 829, 435 S.E.2d 54 (1993)(emphasis in original). As for negligent entrustment, "liability is predicated not on the doctrine of respondeat superior but on a negligent act of the owner in lending his automobile to another to drive, with actual knowledge that the driver is incompetent or habitually reckless, and this negligence must concur, as a part of the proximate cause, with the negligent conduct of the driver on account of his incompetence and recklessness." La Croix, *supra citing* Cherry v. Kelly Services, Inc., 171 Ga.App. 235, 319 S.E.2d 463 (1984).

Punitive Damage Exception

Generally, when an employer admits *respondeat superior*, it is entitled to summary judgement as to claims for negligent entrustment, hiring, supervision, and retention. Durben v Am. Materials, Inc. 232 Ga.App. 750, 751 (1998). "An exception exists for this general rule, however, where a plaintiff has a valid claim for punitive damages." Id. "A plaintiff can shoulder this burden of proof [showing want of care or conscious indifference] only **by showing that an employer had actual knowledge of numerous and serious violations on its driver's record**, or, at the very least, when the employer has flouted a legal duty to check a record

showing such violations." Western Indus., Inc. v Poole, 280 Ga.App. 378 (2006)(emphasis added).

Facts Supporting Punitive Damages in This Case

It is well settled that "[t]he question of whether [defendant] was a safe driver or not is a question for the jury, not a question for the Court on a motion for summary judgment." La Croix v. Spears Mattress Co., No. 1:04-CV-1 (WLS), 2005 WL 1924712, at *3 (M.D. Ga. Aug. 10, 2005)(denying motion for summary judgment on a claim for punitive damages where defendant driver had three moving violations in a six year period). Additionally, the fact that a driver is technically qualified to operate a commercial motor vehicle under the FMCSRs "does not necessarily mean that [defendant] was a safe driver." Id. "If Plaintiff can produce admissible evidence tending to support his claims of negligent hiring, retention, supervision and entrustment, then the question of negligence is for the jury." Id. at *4. See also Cooper v. Marten Transp., Ltd., No. 1:10-CV-03044-JOF, 2012 WL 12358220 (N.D. Ga. Feb. 23, 2012)(denying motion for summary judgment as to claim for punitive damages where defendant's driving history included nine (9) speeding tickets over an eight (8) year period); Meyer v. Trux Transp., Inc., No. CIV A 105CV-02686-GE, 2006 WL 3246685 (N.D. Ga. Nov. 8, 2006)(denying motion for summary judgment where it was unclear whether defendant motor carrier had satisfied legal duties under FMCSRs to obtain documentation from prior employers

and defendant driver had marijuana metabolite in his system at time of collision and had previously tested positive for marijuana while working for another motor motor carrier).

Here, Defendant Gisca's driving record establishes a that he had a propensity to violate traffic/driving laws and posed an unreasonable risk of harm to the public. The fact that he accrued twenty citations/instances of violations of state or federal law in such a short period of time shows that he cannot consistently operate a vehicle in a safe and reasonable manner. Seven of his citations/violations were serious enough to rise to the level of him being placed immediately out of service – meaning that he was no longer legally able to drive without first rectifying the violation.

Moreover, the record further establishes that Defendant HMD was aware of Defendant Gisca's driving history and hired him/allowed him to drive anyway. Given Defendant HMD's knowledge regarding nineteen of Defendant Gisca's violations/citations in a twenty month period before it hired him, it should have come as no shock to them when he was involved in a collision where he received a citation for violating a traffic law less than two months after he was hired. When viewed in a light most favorable to Plaintiff, the evidence establishes that Defendant Gisca posed an unreasonable risk of harm to the public, Defendant HMD knew about it and should not have allowed him to drive for them but did so anyway.

For all of these reasons, the evidence shows Defendant HMD's conduct constitutes conscious indifference to consequences and supports Plaintiff's claim for punitive damages.

### B. DEFENDANT HMD IGNORED ITS DUTIES UNDER THE FMCSRs IN RELATION TO THE HIRING, QUALIFYING, AND RETENTION OF DEFENDANT GISCA

Separate and apart from the common law doctrines of negligent hiring and retention, Defendants' clear violation of its duties under the Federal Motor Carrier Safety Regulations serves as a separate basis for punitive damages in this case. The FMCSRs contained in Title 49 of the Code of Federal Regulations Parts 350, 382, 383, and 390 through 397 have been adopted under Georgia law. See Ga. Comp. R. & Regs. 515-16-4-.01; Solano-Rodriguez v. State, 295 Ga. App. 896, 896, 673 S.E.2d 351, 352 (2009). Every motor carrier "shall, at least once every 12 months, review the motor vehicle record of each driver it employs to **determine whether that driver meets the minimum requirements for safe driving**." 49 C.F.R. § 391.25(b)(emphasis added). In performing its analysis, the motor carrier "**must consider any evidence that the driver has violated any applicable Federal Motor Carrier Safety Regulations**" and "any evidence that the driver has violated laws governing the operation of motor vehicles, and must give great weight to violations…that indicate that the driver has exhibited a disregard for the safety of the public." 49 C.F.R. § 391.25(b)(1) and 49 C.F.R. § 391.25(b)(2) (emphasis

added). Under the FMCSRs, a conviction means an adjudication of guilt, "a plea of guilty or *nolo contendre* accepted by the court, [or] the payment of a fine or court cost." 49 C.F.R. § 390.5.

Here, although Defendant HMD checked Defendant Gisca's driving record, they ignored what they found. Defendant Gisca's driving record establishes that he did not "meet the minimum requirements for safe driving" as he had twenty citations/violations in the twenty months prior to being hired by Defendant HMD. Under the FMCSRs, Defendant HMD was legally required to consider each and every one of these citations because they involved violations of the regulations. Yet, Defendant HMD's corporate representative testified that the company ignored the vast majority of the violations. See Exhibit B at P. 40, Li. 3 – 11. Each one of these citations/violations met the definition of "conviction" contained in 49 C.F.R. § 390.5 because Defendant Gisca's testimony established he paid the fines (See Exhibit A at P. 54, Li. 3 – 8, P. 57, Li. 6 – 7, and P. 63, Li. 5 – 6) and/or that the violations were legitimately issued but not his fault due to the age of the equipment he was provided by his employers (See Exhibit A at P. 67, Li. 7 – 10, P. 67, Li. 15 – 22, P. 68, Li. 5 – P. 69, Li. 17, and P. 69, Li. 18 – 25, P. 64, Li. 12 – P. 65, Li. 23).

Defendants' Brief states that punitive damages on a claim for negligent hiring/entrustment "require[s] 'actual knowledge of numerous and serious violations on its driving record.' " See Defendants' Brief at P. 12. As shown above, Defendant

HMD knew about Defendant Gisca's driving history. Therefore, summary judgment is inappropriate as Plaintiff has met all prerequisites for such a claim.

Equally improper, Defendants' Brief suggests that it cannot be subject to punitive damages for negligent hiring because it "appropriately investigated Gisca…[and his] driving record." Id. at P. 9. As shown above, obtaining a driving history is not enough. The company is under a duty to determine whether the driving history establishes a propensity for unsafe driving and whether the driver meets the minimum standards for safe driving. A reasonable jury could easily determine that a driver with nineteen violations/citations in a less than two-year period is such a driver and therefore summary judgment as to Plaintiff's punitive damages claim is inappropriate.

For all of these reasons, the evidence shows Defendant HMD's conduct constitutes conscious indifference to consequences and supports Plaintiff's claim for punitive damages.

### C. DEFENDANT HMD'S FAILURE TO FOLLOW ITS OWN POLICIES WITH REGARD TO DEFENDANT GISCA'S QUALIFICATION TO DRIVE FURTHER SUPPORTS PLAINTIFF'S PUNITIVE DAMAGE CLAIM.

A third basis for punitive damages exists because there is evidence that Defendant was required by its own policies and procedures to terminate the driver long before this crash occurred. Under Georgia law, "[t]he appropriate standard of care in a negligent hiring/retention action is whether the employer knew or should

have known the employee was not suited for the particular employment." Patterson v. Se. Newspapers, Inc., 243 Ga. App. 241, 245, 533 S.E.2d 119, 123 (2000) *quoting* Kemp v. Rouse-Atlanta, 207 Ga.App. 876, 878, 429 S.E.2d 264, 267 (1993). "[E]ven if an employer complied with federal regulations, it can still be liable for negligent hiring if it violated its own hiring policy." Karr v. Celadon Trucking Servs., Inc., No. 1:16-CV-02587-LMM, 2017 WL 11084520, at *5 (N.D. Ga. Nov. 3, 2017) *citing* W. Indus., Inc. v. Poole, 280 Ga.App. 378, 382, 634 S.E.2d 118, 122-23 (2006) (upholding denial of summary judgment on negligent hiring claim where plaintiff produced evidence from which a jury could reasonably conclude that defendant failed to take reasonable care when it violated its own policy of obtaining a prospective employee's driving record); Patterson, 533 S.E.2d at 123 (explaining that employer's failure to follow its own investigative procedures could support a negligent hiring claim).

In this case, Defendant HMD has internal policies governing driver qualification and the consequences for drivers who are non-compliant. See Exhibit F at P. 7. Under HMD's own policy, a driver with three or more instances of "unsafe driving/moving violations" in a three-year period is disqualified from driving and will be terminated. See Exhibit B at P. 30, Li. 10 – P. 32, Li. 5, Exhibit F. Defendant Gisca had twenty instances of unsafe driving/moving violations in the twenty months prior to being hired. Therefore, under HMD's own policy, he would not be

qualified to drive and should have never been hired in the first place.[4] See Exhibit B at P. 41, Li. 1 – P. 42, Li. 4, P. 35, Li. 12 – P. 36, Li. 7. Defendant HMD's failure to follow its own policies regarding driver qualification is further support for Plaintiff's punitive damage claim as this conduct is willful and shows conscious indifference.

Defendants' Brief claims that Defendant Gisca was qualified under "the company's point system for driver qualification." See Defendants' Brief at P. 9. However, Defendant HMD's corporate representative confirmed that the hiring criteria produced during Defendant HMD's deposition was not in effect at the time Defendant Gisca was hired. See Exhibit B at P. 43, Li. 13 – 25. Defendant has not produced any point system or other policy that was in effect at the time Defendant Gisca was hired. The only policy on the evidentiary record regarding driver qualification that was in effect at the time Defendant Gisca was hired is the policy contained in Exhibit F at P. 7. The record shows that if Defendant HMD would have followed this policy, Defendant Gisca would have never been qualified to drive for HMD. His twenty violations in the twenty months before he was hired exceeded the

[4] There are two reasons why any claim by Defendants that most of these violations are maintenance related and not "moving violations" under this policy fails. First, HMD's corporate representative agreed that maintenance violations would count under the policy. See Exhibit B at P. 36, Li. 3 – 7. Second, Defendant Gisca is still not qualified under this policy because his history includes three non-maintenance citations for failure to wear a seatbelt, illegal u-turn, and following too close.

company's policy disqualifying a driver after three or more violations. Defendant HMD's failure to follow its own policy entitles Plaintiff to seek punitive damages against HMD for negligent hiring/qualifying/retention.

For all of these reasons, the evidence shows Defendant HMD's conduct constitutes conscious indifference to consequences and supports Plaintiff's claim for punitive damages.

## CONCLUSION

Defendants' motion for summary judgment should be denied because the evidence when viewed in a light most favorable to Plaintiff establishes that Defendant Gisca's driving history shows he had a propensity for dangerous and unsafe driving; Defendant HMD knew about Defendant Gisca's driving history and numerous violations of federal and state laws; and, in spite of this, Defendant HMD decided to hire him anyway in contrast to its own policies regarding driver qualification. This conduct establishes willful behavior and conscious indifference to consequences by Defendant HMD such that punitive damages are appropriate. Accordingly, Defendants' motion should be denied.

Submitted this 23rd day of January, 2020.

**FRIED GOLDBERG LLC**

*/s/ Brian T. Mohs*
BRIAN T. MOHS
GEORGIA BAR NO. 228033

THREE ALLIANCE CENTER
3550 LENOX ROAD, N.E., SUITE 1500
ATLANTA, GA 30326
TELEPHONE: 404-591-1800
FACSIMILE: 404-591-1801
EMAIL: BRIAN@FRIEDGOLDBERG.COM

**COOPER F. SPENCE**
**ATTORNEY AT LAW, LLC**

*/s/ Cooper F. Spence*____________
COOPER F. SPENCE
GEORGIA BAR NO. 886549

5447 ROSWELL ROAD, NE
ATLANTA, GEORGIA 30342
TELEPHONE: 678-310-6127
E-MAIL: COOPER@COOPERSPENCELAW.COM

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing pleading complies with the font and point selections approved by the Court in Local Rule 5.1(C). This document has been prepared in Times New Roman font, 14 point.

**FRIED GOLDBERG LLC**

*/s/ Brian T. Mohs*
BRIAN T. MOHS
GEORGIA BAR NO. 228033

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system, which will automatically send an e-mail notification of such filing to the following attorneys of record:

Clay S. O'Daniel, Esq. and Matthew R. Johnson. Esq.
O'Daniel McDonald, LLC
8010 Roswell Road, Suite 210
Atlanta, GA 30350-3939

*Counsel for Defendants*

Cooper F. Spence, Esq.
Attorney at Law
5447 Roswell Road
Atlanta, Georgia 30342

*Co-Counsel for Plaintiff*

This 23rd day of January, 2020.

**FRIED GOLDBERG LLC**

*/s/ Brian T. Mohs*
BRIAN T. MOHS
GEORGIA BAR NO. 228033